### ELLSWORTH *v.* TAYLOR.

1. LANDLORD AND TENANT—TENANT'S RIGHTS TO POSSESSION TERMINATED ON EXPIRATION OF LEASE UNLESS RENEWED.

   On the termination of a three-year lease with option to renew for two years on terms and conditions to be agreed upon, all the tenant's rights to possession ended and he was subject to eviction by summary proceedings unless he secured the extension provided for.[1]

2. SAME — FINDING THAT ON TERMINATION OF LEASE MONTH TO MONTH TENANCY WAS CREATED SUPPORTED BY RECORD.

   The finding of the trial court that, on the termination of the lease, a new arrangement was made between the parties creating a month to month tenancy, thus negativing the presumption of a year to year tenancy which ordinarily arises from holding over after the expiration of such a lease, *held*, supported by the record.[2]

Error to Wayne; Richter (Theodore J.), J.    Sub-

[1]Landlord and Tenant, 36 C. J. § 123; 36 C. J. § 1809; [2]Id., 35 C. J. § 299.

mitted October 14, 1925.     (Docket No. 62.)     Decided December 22, 1925.

Summary proceedings by Frank E. Ellsworth, doing business as the Henry Clay Hotel, against Thomas Taylor for possession of leased premises.    There was judgment of restitution, and defendant appealed to the circuit court.    Judgment for plaintiff.    Defendant brings error.    Affirmed.

*Henry W. Glicman*, for appellant.

*Julien Winterhalter* (*Atkinson, Schweikart & Clark*, of counsel), for appellee.

STEERE, J.     Plaintiff is owner of the Henry Clay Hotel in the city of Detroit.    On May 1, 1916, he leased a tailor shop in the basement of said hotel to defendant under a written lease for a term of three years at a rental for the entire period of $900.    This was to be paid in monthly instalments of $25.    Said lease was in outline of customary form with the usual covenants which need not be recited, the only provision material here being the concluding clause, as follows:

"It is further agreed by the parties hereto that an option for two years over the above granted term is to be given on terms and conditions to be agreed upon at the expiration of the above granted term."

During the three-year period of the lease its terms were fully complied with by both parties.    At its expiration the two-year option clause was never exercised.    For defendant it is claimed nothing was then said between the parties as to the lease or option, but defendant remained in possession paying the same accepted rent from month to month as before, thereby becoming and thereafter continuing a tenant from year to year for successive terms; while for plaintiff it is claimed that defendant then asked for a renewal of

the lease which plaintiff declined to give, but told him he might continue in occupation and use of the shop as a tenant from month to month, and defendant did remain, paying a monthly rental of $25 until January, 1920, when plaintiff raised it to $30 a month, in January, 1924, from $30 to $35 a month, and in July, 1924, from $35 to $40 a month, against which defendant at no time protested.

Desiring possession of the premises, plaintiff on June 7, 1924, served a 30-day notice to quit upon defendant. There is no evidence that plaintiff accepted any rent after giving this notice. At expiration of the 30 days defendant refused to vacate the property and plaintiff instituted summary proceedings against him before a circuit court commissioner to regain possession. The case was there tried by jury and the court directed a verdict in plaintiff's favor. On appeal to the circuit court of Wayne county retrial was had before the court without a jury in which findings of fact and conclusions of law were requested and made, followed by judgment thereon in plaintiff's favor. Requests were made by defendant for amended findings of fact and conclusions of law, which were heard and denied.

Amongst other things the court found as facts that there was a conversation between the parties at termination of the written lease in which "plaintiff stated that defendant could remain in possession as a month to month tenant," that both the conduct of the parties and provisions of the lease warranted the finding that they "never intended to extend the terms of the original lease beyond the period of the lease itself," the evidence showed not only the two-year option in the lease was never exercised, but "at the expiration of the lease a new relationship was created between the parties" and "this new arrangement created a month to month tenancy."

The court found as conclusions of law that defend-

ant was a tenant at will paying monthly rental and as such entitled to only a 30-day notice, that his written lease being for three years he did not become a tenant from year to year by holding over, and any presumption which might arise from holding over after expiration of a yearly lease would be rebutted "by the terms of the lease, by a new arrangement entered into by the parties at expiration of the lease, by the conduct of the parties since the expiration of the lease," etc., with other conclusions of law urged by defendant as error, but, as we view the issue, immaterial.

For disposition of the case we need only consider defendant's insistent contention that the evidence does not support the court's finding of fact that there was at the termination of the written lease an express or implied agreement, or arrangement, between the parties creating a tenancy from month to month. Beyond the undisputed facts before related, we have only the oral testimony of the two parties to this action.    Plaintiff testified that in May, 1919, when the written lease expired, defendant—

"asked for a renewal of the lease and I said I did not care to renew it; that we should let it run along from month to month because I wanted to use it myself sometime.   *   *   *   I was there in his shop and he asked me to renew the lease and I told him I did not want to renew the lease; that we should continue from month to month   because I wanted to use it myself sometime.

"Q. And that has been going on up to the time you gave him notice to quit?

"A. Yes.   *   *   *

"Q. Do you know what Mr. Taylor told you?

"A. He asked me for a renewal of the lease which I refused; he broached the subject himself.   *   *   *

"Q. You did not agree upon any renewal terms.

"A. No; he has had possession up to this time.

"Q. And the rent has been changed or raised two or three times?

"A. Yes."

Defendant's entire direct-examination is as follows:

"*Q*. At the expiration of the three-year period referred to in the lease, did you have a conversation with Mr. Ellsworth at your store?

"*A*. No.

"*Q*. Did you have any conversation with him after the three years?

"*A*. After the three years we did not talk about a renewal of the lease.

"*Q*. What did you talk about?

"*A*. I can't tell exactly; four or five years ago.

"*Q*. Do you recollect what was said?

"*A*. No.

"*Q*. Tell the court what was said, what you remember about the conversation.

"*A*. We did not mention anything about the lease at all.

"*Q*. What was talked about?

"*A*. He just talked about the old lease; that I could say."

His more protracted cross-examination was in the main equally negative and noncommittal. It runs in part as follows:

"*Q*. What was said when your rent was raised in January, 1920?

"*A*. I did not say anything.

"*Q*. When he told you that you were going to pay more rent, what did you say to him?

"*A*. I did not say anything; it was all right.

"*Q*. What was said in January, 1924, when the rent was raised again?

"*A*. The same thing; I did not say anything.

"*Q*. How long were you to pay it for; any time at all?

"*A*. Every month.

"*Q*. What was said in July, 1924, when your rent was raised to $40 a month, were you willing to pay it?

"*A*. Yes. * * *

"*Q*. What did Mr. Ellsworth say to you when he raised your rent the first time?

"*A*. He did not say anything.

"*Q*. How long did he tell you that you could stay?

"*A*. He did not say anything. * * *

"*Q.* Did he tell you that your rent was going to be so much?—was going to be changed to so much a year or so much a month?

"*A.* I don't know. * * *

"*Q.* What did he say when he raised your rent?

"*A.* He did not say nothing. * * *

"*Q.* Then how did you know that you were going to pay more money?

"*A.* I got from the office a bill; the change is to be for the rent. * * *

"*Q.* On those bills it would be for one month's rent?

"*A.* Yes.

"*Q.* But not for any year's rent?

"*A.* No.

"*Q.* And you paid it every month?

"*A.* Yes, by the month—it was by the month."

When the three-year term expired, all defendant's rights to possession ended, and he was subject to eviction by summary proceedings unless under his option clause he secured a two-year extension "on terms and conditions to be agreed upon" at that time. He evidently wanted to remain, as he did so for several years, paying increased rent without objection when demanded until plaintiff wanted possession, which defendant still insists on retaining. Yet he testified that neither he nor plaintiff ever mentioned a lease to the other after the three-year lease expired.

There was ample evidence both direct and inferential to support the court's finding of fact that the parties by a "new arrangement created a month to month tenancy;" and to justify the conclusion of law based thereon that the presumption which ordinarily arises from holding over after the expiration of a lease "was totally negatived by the terms of the lease and the new agreement between the parties."

The judgment is affirmed.

McDONALD, C. J., and CLARK, BIRD, SHARPE, MOORE, FELLOWS, and WIEST, JJ., concurred.